# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KRISTIN BUSH; JAMES BUSH<br><br>Plaintiff,<br><br>v.<br><br>STEVEN B. WOLFSON;<br>DENA I. RINETTI<br><br>Defendant(s). | Case No. 2:19-cv-1096-RFB-VCF<br><br>**ORDER** |

## I. INTRODUCTION

Before the Court are Defendants' Motion to Dismiss, Plaintiff Kristin Bush's Motion to Declare NRS 200.208 Unconstitutional, and Plaintiff Kristin Bush's Motion for Preliminary Injunction. ECF Nos. 8, 21, 22. For the following reasons, the Court grants Defendants' Motion to Dismiss and denies the other motions.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their complaint on June 24, 2019. ECF No. 1. Defendants moved to dismiss on July 18, 2019. ECF No. 8. A response and reply were filed. ECF Nos. 14, 16. Plaintiffs filed a motion to declare NRS 200.208 Unconstitutional and a motion for preliminary injunction on December 31, 2019. ECF Nos. 21, 22. Responses and replies were filed. ECF Nos. 46, 47.

### III. FACTUAL ALLEGATIONS

Plaintiffs allege as follows in their complaint:

Michael Hemsley was born on July 5, 1999 in Las Vegas to Plaintiff Kristin Bush and her ex-husband (not a party to this case). Michael Hemsley was severely handicapped since birth with congenital birth defects. Over his lifetime he was never able to develop normally, both physically and mentally. He was never able to learn more than about two dozen words, was not able to speak normally, and was able to walk only very short distances without help. After extensive testing, he was given a probable diagnosis of Bilateral Perisylvan Polymicrogyeria Syndrome by a pediatric neurologist in Spring 2017. This is an extremely rare and incurable congenital birth defect.

Evan Hemsley was born on January 29, 2002 to Kristin Bush and the same ex-husband. Evan was also severely handicapped at birth. A few months after he was born, it was noted that he was not developing normally. Evan was never able to speak, read, write or walk. Soon after Evan was born, Kristin Bush divorced Evan and Michael's biological father.

Kristin Bush received legal and physical custody of both children. Plaintiff James Bush is Kristin Bush's current spouse and also took care of Evan and Michael. Attempts were made throughout Evan's life to obtain a medical diagnosis, but no doctor was ever able to provide a competent diagnosis and his conditions were largely incurable.

Evan was incapable of functioning in any school environment. He was never enrolled in the Clark County Public Schools during his lifetime. The plaintiffs placed Michael Hemsley into the Clark County School District System for a free and appropriate public education. Unfortunately, Michael was not mentally capable of learning and even as of today, he has the mental capacity and functioning of a toddler child. Evan was never enrolled in the Clark County Public Schools during his lifetime.

After a few years of educational efforts for Michael, Kristin Bush removed Michael from public school. As of February 2013, Child Protective Services was fully aware that neither of the boys attended school in Clark County and never questioned the plaintiffs nor raised any official concerns with the plaintiffs.

On December 16, 2015 Evan Hemsley suddenly passed away in the plaintiffs' residence. Plaintiffs called 911 for medical assistance. Evan was taken by ambulance to a local hospital where he was officially pronounced dead. He was later taken to the Clark County Coroner's office for an autopsy. Evan Hemsley weighed 22 pounds and was about 43 inches tall at the time of his death.

Because of the circumstances of Evan's medical conditions and his death, the police were also called to the scene, along with representatives from Child Protective Services. Michael Hemsley was removed from the home and taken to Sunrise Hospital for evaluation of his multiple birth defects and abnormalities.

An autopsy was done on Evan. The pathologist conducted an autopsy under protocols applicable to a severely handicapped child. The pathologist reviewed hospital records and sent tissue samples to other specialized forensic laboratories for more sophisticated testing. Evan's brain tissue was sent to a highly specialized forensic laboratory at Stanford University.

The autopsy report was not completed until November 3, 2016, over ten months after Evan's death. The Stanford Laboratory concluded that Evan had a serious brain malformation called Jourbert Syndrome. The pathologist concluded:

> Evan Hemsley died of a cecal volvulus. Other significant contributing conditions include Joubert Syndrome and malnutrition. It is unclear to what degree his malnutrition is attributed to his long-standing neurological abnormality or solely to insufficient caloric and protein intake. Consequently, the manner of death is certified as undetermined.

Soon after Michael was removed from the plaintiffs' home, the Clark County District Attorney, Juvenile Division, filed an abuse and neglect petition in Case No. J-16-338536-U1 in

- 8 -

the Juvenile Division of Family Court on January 5, 2016. During the proceedings in this case, the plaintiffs were permitted extensive visitation rights to see Michael while he was in a rehabilitation hospital associated with Sunrise Hospital and to attend his various medical appointments. Plaintiffs did in fact visit with Michael many times and went to several of his medical appointments. Their contact visits were not supervised.

In the Juvenile Court proceedings, plaintiffs won the right to have Michael returned to their home at a hearing on February 1, 2017. He was ordered to be returned to the plaintiffs on Monday, February 6, 2017.

The police investigation of Evan's death was conducted by Detective Teresa Tavares of the Las Vegas Police Department. Detective Tavares prepared a police affidavit seeking an arrest warrant for the plaintiffs, submitted the application to the Las Vegas Justice Court on Thursday, February 2, 2017, and obtained an arrest warrant by Friday, February 3, 2017. Plaintiffs allege that she did so upon learning that the plaintiffs won custody of Michael.

Detective Tavares, assisted by other police officers, rushed to the plaintiffs' home late Friday afternoon, February 3, 2017, and arrested plaintiffs on two counts of felony child abuse and/or neglect. Detective Tavares was very hostile to the plaintiffs and told them that "they were lucky she was not arresting them for murder."

Plaintiffs were booked into the Clark County Detention Center on Friday evening. Plaintiffs were able to have bail posted to secure their release from custody. James Bush was released from custody late Sunday evening, February 5, 2017. Kristin Bush was not released but was taken against her will and without her consent to the University Medical Center, allegedly for a mental competency examination. She was evaluated Monday morning and determined not to have any mental condition that would justify keeping her in a hospital.

Plaintiffs appeared for the initial arraignment in the Las Vegas Justice Court and were informed by the District Attorney that this case was being submitted to the Clark County Grand Jury. On March 1, 2017 the Grand Jury indicted the plaintiffs on two counts of felony child abuse and neglect.

The operative language of the indictment charged both Plaintiffs with Child Abuse, Neglect, or Endangerment with Substantial Bodily Harm (Category B Felony-NRS 200.5081(1)-NOC 55222), committed at and within the County of Clark, State of Nevada, on or between July 1, 2007 and December 16, 2015.

Plaintiffs were charged with two counts—one for Evan and the other for Michael— of "willfully, unlawfully, and feloniously" causing a child under 18 to suffer "unjustifiable physical pain or mental suffering as a result of abuse or neglect."

Plaintiffs appeared in state court and pled not guilty. Thereafter, Plaintiffs challenged the indictment with a motion to dismiss and with a pretrial petition for a writ of habeas corpus. The District Court denied plaintiffs' pretrial motions in August 2017.

Plaintiffs then filed a petition for writ of mandamus in the Nevada Supreme Court on August 23, 2017. The petition was redirected to the Nevada Court of Appeals, which denied the petition on December 4, 2018. Plaintiffs timely filed a petition for review of the Court of Appeals' decision on December 20, 2018. The Nevada Supreme Court denied Plaintiffs' motion in a short order on February 26, 2019.

Plaintiffs allege that the State of Nevada filed the indictment against plaintiffs out of spite and animosity because Michael Hemsley was being returned to the plaintiffs' residence by order of the Juvenile Court Judge, and because Child Protection Services was opposed to the Order returning Michael to the custody of the plaintiffs. Plaintiffs bring the following claims against

Defendants, all under 42 U.S.C. §1983: violations of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400; violations of the Sixth Amendment for knowingly and intentionally procuring an indictment against plaintiffs that fails to satisfy legal standards for pleading criminal charges; violation of the constitutional right to make health care decisions (substantive due process under the Fifth Amendment); retaliation claim under the Fourth, Fifth, Sixth and Fourteenth Amendments; violation of the Sixth Amendment right to fair trial in the state judicial system, and a Fifth Amendment due process challenge to Section 200.208 of the Nevada Revised Statutes ("NRS"), as unconstitutionally vague. Plaintiffs also filed a motion for a preliminary injunction prohibiting the defendants from prosecuting the plaintiffs criminally for abuse and neglect charges in violation of their federally guaranteed statutory rights, and seeking declaratory relief that NRS 200.508 is unconstitutional on vagueness grounds.

### IV. LEGAL STANDARD

#### a. Motion to Dismiss

An initial pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Services, Inc., 706 F.3d 1017, 1019 (9th Cir. 2013) (citations omitted).

To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must do more than assert "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . . ." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In other words, a claim will not be dismissed if it contains

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Id. at 678 (internal quotation and citation omitted). The Ninth Circuit, in elaborating on the pleading standard described in Twombly and Iqbal, has held that for a complaint to survive dismissal, the plaintiff must allege non-conclusory facts that, together with reasonable inferences from those facts, are "plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).

A party may also move to dismiss a case for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Fed. R. Civ. P (12)(b)(1). When considering a motion to dismiss for lack of subject matter jurisdiction, the Court continues to assume all facts alleged by the plaintiff are true. DaVinci Aircraft, Inc. v. United States, 926 F.3d 1117, 1122 (9th Cir. 2019).

### b. Preliminary Injunction

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). To obtain a preliminary injunction, a plaintiff must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that the public interest favors an injunction." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc., 758 F.3d 1069, 1071 (9th Cir. 2014), as amended (Mar. 11, 2014) (citing Winter, 555 U.S. 7, 20 (2008)). A preliminary injunction may also issue under the "serious questions" test. Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134 (9th Cir. 2011) (affirming the continued viability of this doctrine post-Winter). According to this test, a plaintiff can obtain a

preliminary injunction by demonstrating "that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor," in addition to the other <u>Winter</u> elements. <u>Id.</u> at 1134–35 (citation omitted).

**V.     DISCUSSION**

Defendants argue that the Court does not have subject matter jurisdiction over this case because of the <u>Rooker-Feldman</u> doctrine, and that <u>Younger</u> abstention requires that the Court abstain from interfering with an ongoing state court criminal proceeding. The Court agrees with Defendants and dismisses all claims.

**a.     <u>Rooker-Feldman</u>**

The Rooker-Feldman doctrine, derived from two Supreme Court cases from which its name comes, prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment. <u>Kougasian v. TMSL,Inc.</u>, 359 F.3d 1136, 1139 (9th Cir. 2004) (citing <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413 (1923); <u>Dist. of Columbia Ct. of Appeals v. Feldman</u>, 460 U.S. 462 (1983). If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, or a more general constitutional challenge that is "inextricably intertwined" with the allegedly erroneous decision, then <u>Rooker-Feldman</u> bars the federal district court from having subject-matter jurisdiction over the case. <u>Noel v. Hall</u>, 341 F.3d 1148, 1161 (9th Cir. 2003). A claim is "inextricably intertwined" with a state court's decision when "adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules." <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, 898 (9th Cir. 2003).

In <u>Bianchi</u>, the Ninth Circuit upheld a lower court's dismissal of a case under <u>Rooker-Feldman</u> where the plaintiff sought to obtain a ruling from federal court that would vacate a California appellate court's ruling. <u>Id</u>. at 897. In deciding that the federal court lacked subject

matter jurisdiction under Rooker Feldman, the Ninth Circuit compared the plaintiff's pleadings in state court to the plaintiff's pleadings in federal court and concluded that the plaintiff was "essentially ask[ing]the federal court to review the state court's denial in a judicial proceeding," and was also asking the federal court to "afford him the same individual remedy he was denied in state court." Id. at 898.

The Ninth Circuit's holding in Bianchi applies here. Plaintiffs are undeniably seeking federal court review of the Nevada Court of Appeals' denial of plaintiffs' petition for a writ of mandamus, and the Nevada Supreme Court's affirmance of that denial. The relief Plaintiffs seek in this case—a permanent and preliminary injunction enjoining the prosecution of Plaintiffs and a declaration that NRS 200.508 is unconstitutional—is the same relief that Plaintiffs sought in their petition for writ of mandamus.

Plaintiffs argue that Rooker-Feldman is inapplicable here, because it only applies "to a narrow band of cases wherein a party has lost in state court, the state court judgment is final, and the losing party then files a federal district court case challenging that outcome." Pl.'s Repl. Mot. Prelim. Inj. 2. There is no final state court judgment, plaintiffs argue, because the state court criminal proceeding has not gone to trial.

But Plaintiffs are wrong—there is a final judgment here. Plaintiffs filed a petition for writ of mandamus that the Nevada Court of Appeals denied. The Nevada Supreme Court affirmed the denial, which then made the judgment final. See Mothershed v. Justices of Supreme Court, 410 F.3d 602, 604 n.1 (9th Cir. 2005) (state supreme court's denial of a petition for writ of mandamus is final ruling for Rooker- Feldman purposes).

Plaintiffs also attempt to argue that Rooker-Feldman does not apply by citing Kougasian v. TMSL,Inc. 359 F.3d 1136 (9th Cir. 2004). In Kougasian, the plaintiff sought to set aside state

court judgments that she argued were based on the state court's consideration of false declarations submitted by the defendants in the case. 359 F.3d at 1138. The Ninth Circuit found that <u>Rooker-Feldman</u> did not apply because the plaintiff in that case did not "not allege that she [had] been harmed by legal errors made by the state courts," but rather that "defendants' wrongful conduct ha[d] caused her harm." <u>Id</u>. at 1140. The Ninth Circuit thus made clear that in order for the <u>Rooker-Feldman</u> doctrine to apply, a party must not only seek to set aside a state court judgment, but allege "a legal error by the state court as the basis for that relief."

Plaintiff's complaint is replete with allegations that the state courts committed legal error. Plaintiffs allege in their complaint that "the Court of Appeals knowing[sic] and intentionally refused to apply the notice of charges standards constitutionally required by the Sixth Amendment, state statutes and cases, and controlling legal precedents from the United States Supreme Court." Pl.'s Compl. ¶ 54. Plaintiffs further allege in their complaint that "it is impossible for them to receive a fair trial before an unbiased state judicial officer because multiple state judges and justices knowingly and intentionally" refused to abide by federal law, Supreme Court precedent, and Nevada law on grand juries." Pl.'s Compl. ¶ 59. Thus Plaintiffs have alleged legal error on the part of the state court, and the case falls squarely within the scope of cases for which the <u>Rooker-Feldman</u> exception applies: "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

The <u>Rooker-Feldman</u>, doctrine, however, does not preclude a plaintiff from "presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation." <u>Mothershed v. Justices of Supreme</u>

Court, 410 F.3d 602, 607 (9th Cir. 2005).The Court will therefore dismiss for lack of subject matter jurisdiction all of Plaintiffs' claims except for the claim regarding the constitutionality of NRS 200.508

### b. <u>Younger</u> Abstention

Although the Court will not dismiss the challenge to the constitutionality of NRS 200.508 under <u>Rooker-Feldman</u>, the Court finds that <u>Younger</u> abstention requires the Court to nevertheless dismiss the claim.

Under the <u>Younger</u> abstention doctrine, federal courts must not interfere with pending state criminal proceedings absent extraordinary circumstances. <u>Younger v. Harris</u>, 401 U.S. 37 (1971). This requirement is premised on principles of equity and comity and the idea that "federal courts should maintain respect for state functions and should not unduly interfere with the state's good faith efforts to enforce its own laws in its own courts." <u>Dubinka v. Judges of Superior Court of State of Cal.</u>, 23 F.3d 218, 223 (9th Cir. 1994). <u>Younger</u> abstention is appropriate when (1) there is an ongoing state judicial proceeding; (2) the proceeding implicates important state interests; (3) there is an adequate opportunity in the state proceedings to raise federal challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceedings. <u>Nationwide Biweekly AdminInc. v. Owen</u>, 873 F.3d 716, 727 – 28 (9th Cir. 2017).

The Court finds that the prerequisites for <u>Younger</u> abstention are met. Neither side disputes that there remains an ongoing criminal proceeding. The state proceeding implicates an important state interest—the state's interest in preventing the neglect, abuse, or endangerment of children. The requested relief also seeks to enjoin the state criminal proceedings. Finally, the Court also finds that there is an adequate opportunity in the state proceedings to raise federal questions.

It is true that the Nevada Supreme Court has thrice addressed the unconstitutionality of NRS 200.508 and upheld it each time. See Bludsworth v. State, 646 P.2d 558, 560 (Nev. 1982) (phrase "unjustifiable physical pain or suffering" in NRS 200.508 is not unconstitutional as-applied); Smith v. State, 927 P.2d 14, 18 (Nev. 1996) abrogated on other grounds by City of Las Vegas v. Eighth Judicial Dist. Ct, 59 P.3d 477, 480 (Nev. 2002), abrogated on other grounds by State v. Castaneda, 245 P.3d 550, 553 n.1 (2010) (phrase "placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect" not unconstitutional as applied); Rimer v. State, 351 P.3d 697, 710 – 11(Nev. 2015). However, the Ninth Circuit has found that "the fact that the state supreme court has previously rejected an identical argument does not make Younger abstention inappropriate." Dubinka, 23 F.3d at 225.

Plaintiffs concede that direct appeal of a final judgment in the state court criminal proceeding and habeas relief are available to them. Pl.'s Repl. Mot. Dismiss 23. Accordingly, the Court finds that Plaintiffs are not procedurally barred from raising their case in state court and there is an adequate forum in the state courts for Plaintiffs to bring their federal challenges.

"If state proceedings are conducted in bad faith or to harass the litigant, or other extraordinary circumstances exist, the district court may exercise jurisdiction even if the criteria for Younger abstention are met." Baffert v. Cal. Horse Racing Bd., 332 F.3d 613, 621 (9th Cir. 2003).The Court finds that Plaintiffs have failed to plead facts sufficient to support a finding that any of the Younger exceptions apply.

The first exception is bad faith. In the Younger abstention context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." Baffert, 322 F.3d at 621 (citing Kulger v. Helfant, 421 U.S. 117, 126 n.9 (1975).

The Supreme Court has never found that the bad faith and harassment exception to Younger applies since articulating the doctrine of Younger. In one case in which the Supreme Court explicitly noted that the exception did *not* apply, the Supreme Court intimated that a showing of bad faith requires at a minimum a finding that repeated judicial authorization of the challenged conduct was improper. Hicks v. Miranda, 422 U.S. 332, 351 (1975). The Supreme Court further found that bad faith could not necessarily be shown even if the state courts had made legal errors on "some one or more issues of state or federal law." Id.

Such a finding was consistent with the Supreme Court's holding in Dombrowski v. Pfister, 380 U.S. 479 (1965), a case that preceded Younger, but one which the Supreme Court identified in Younger has having sufficiently demonstrated bad faith or harassment. In Dombrowski, the parties seeking federal intervention had their records seized pursuant to search and arrest warrants that had been vacated by a state judge for lack of probable cause. Dombrowski, 380 U.S. at 488. The prosecutor continued to threaten to initiate new prosecutions under the same statutes in issue and hold hearings using evidence that had been ordered suppressed. Id. The Supreme Court found that "[t]hese circumstances . . . sufficiently establish the kind of irreparable injury above and beyond that associated with the defense of a single prosecution brought in good faith, that [is] sufficient to justify federal intervention." Younger, 401 U.S. at 48.

In this case, plaintiffs allege that the following facts give rise to an inference of bad faith:

1. The case involving Evan's death had been investigated since December 16, 2015 through January 31, 2017, but Detective Tavares did not issue an arrest warrant for Plaintiffs until February 2, 2017, the day after Plaintiffs won the right to have Michael returned to their home over Plaintiffs' objections.

2. District Attorney Rinetti opted to submit the case to a grand jury for determination of probable cause rather than use a preliminary hearing.

3. District Attorney Rinetti asked for a no-contact order on the grounds that the plaintiffs posed an immediate danger to the surviving victim during the grand jury proceedings.

4. District Attorney Rinetti did not submit certain exculpatory evidence to the grand jury, including testimony from a pathologist who had reported that a significant contribution to Evan's death was malnutrition for which it was unclear whether the cause was a longstanding neurological abnormality or insufficient caloric and protein intake.

The Court finds that these allegations do not support a finding of bad faith. Rather, the factual allegations support a finding that the state officials brought criminal charges with a reasonable expectation of a valid conviction. Each part of the process of bringing the criminal charge, including the approval of the arrest warrant and the grand jury proceedings themselves, was done pursuant to judicial authorization.

That the district attorney opted to establish probable cause for an indictment via grand jury as opposed to a preliminary hearing does not give rise to an inference of bad faith. Nevada law permits the use of either mechanism to establish whether there is probable cause to indict. Kinsey v. Sherif, Washoe County, 487 P.2d 340, 341 (Nev. 1971).

Plaintiffs allege no facts indicating that the Las Vegas Justice Court that approved the arrest warrant, the judge who presided over the grand jury proceedings, and the district court judge and Nevada Court of Appeals judges who rejected Plaintiffs' arguments regarding the grand jury's constitutional deficiencies, operated out of bad faith. That these judges ruled against Plaintiffs is insufficient on its own to support a finding of bad faith. Hicks, 422 U.S. at 351. Accordingly, the Court finds that the bad faith or harassment exception to Younger does not apply.

The Supreme Court has not articulated all exceptional circumstances, but has recognized that Younger abstention may be inappropriate when the state tribunal is incompetent by reason of bias, or when the statute at issue is patently unconstitutional. Younger, 401 U.S. at 53 – 54. The Court finds that neither of these exceptional circumstances apply.

Plaintiffs argue that the state courts have been biased against Plaintiffs. "Bias exists where a court has prejudged, or reasonably appears to have prejudged an issue." Kenneally v. Lungren, 967 F.2d 329, 333 (9th Cir. 1992)(internal citations omitted). The Supreme Court has further elaborated that a person alleging or proving bias "must overcome a presumption of honesty and integrity in those serving as adjudicators," and must convince the deciding court that "under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." Withrow v. Larkin, 421 U.S. 35, 47 (1975).

Plaintiffs have not alleged any facts demonstrating bias other than the fact that the state courts disagreed with Plaintiffs' legal arguments. Disagreement with a court's legal conclusions, on its own, is insufficient to show bias. See Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion."). Plaintiffs have pled no facts to establish that any of the state court judges exhibited a particular animus or antagonism toward Plaintiffs that would "make fair judgment impossible." Id. Plaintiffs have not alleged any sort of interest on the part of any of the judges that can lead the Court to find there was bias, and so the Court does not find that the state proceedings have been biased.

Younger recognized that one exceptional circumstance warranting against abstention is when the statute at hand is, "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." Younger, 401 U.S. at 53-54 (internal citations omitted). This is unsurprisingly a difficult burden to meet, and Plaintiffs do not meet it.

NRS 200.508 is titled "Abuse, neglect, or endangerment of a child." The law states that "[a] person who willfully causes a child who is less than 18 years of age to suffer unjustifiable physical pain or mental suffering as a result of abuse or neglect or to be placed in a situation where the child may suffer physical pain or mental suffering as the result of abuse or neglect," will suffer from varying penalties depending on the age of the child harmed. Nev. Rev. Stat. § 200.508. The law defines "abuse or neglect" as "physical or mental injury of a nonaccidental nature, sexual abuse, sexual exploitation, negligent treatment or maltreatment of a child under the age of 18 years . . . under circumstances which indicate that the child's health or welfare is harmed or threatened with harm." Nev. Rev. Stat. § 200.508(a).

Based on the language of the statute alone, the Court cannot find that the statue is flagrantly unconstitutional in every clause, sentence, and paragraph, and in whatever manner and against whomever it is applied. There are certainly circumstances in which it could be undisputed that a person willfully caused unjustifiable physical pain or substantial mental harm to a child.

Thus, the Court finds that NRS 200.508(e) is not so patently unconstitutional that it warrants federal intrusion on a pending state court criminal proceeding. Because the Court finds that Younger abstention is required in this case, the Court dismisses Plaintiffs' facial challenge to NRS 200.508's constitutionality. The Court notes that nothing precludes Plaintiffs from raising their legal challenges to the charges against them during the state court criminal proceedings and seeking postconviction relief if necessary.

As the Court has dismissed all of Plaintiffs' claims, the Court also denies Plaintiffs' motion for a preliminary injunction and motion for declaratory relief.

. . .

. . .

## VI. CONCLUSION

**IT IS ORDERED** that Defendants' Motion to Dismiss Complaint (ECF No. 8) is GRANTED.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Declare NRS 200.208 Unconstitutional (ECF No. 21) is DENIED.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Preliminary Injunction (ECF No. 22) is DENIED.

The Clerk of the Court is instructed to close the case.

DATED: March 20, 2020.

_____
**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**